UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| BOATERS RIGHTS ASSOCIATION, an Oregon non-profit corporation; SCOTT PUTNAM, an individual; and SHALOE PUTNAM, an individual, | Case No. 6:23-cv-00333-MK<br><br>**OPINION AND ORDER** |
| Plaintiffs, | |
| vs. | |
| CURT MELCHER, in his official capacity as director of Oregon Department of Fish and Wildlife; LAURA JACKSON, in her official capacity as chair of the Oregon State Marine Board; VAL EARLY, in her official capacity as co-chair of the Oregon State Marine Board; CRAIG WITHEE, in his official capacity as a member of the Oregon State Marine Board; COLLEEN MORAN, in her official capacity as member of the Oregon State Marine Board; and JORGE GUZMAN, in his official capacity as a member of the Oregon State Marine Board, | |
| Defendants. | |

**KASUBHAI,** United States Magistrate Judge:

Before the Court is Defendants' Motion to Dismiss. ECF No. 27. The Court heard Oral Argument on November 21, 2023. ECF No. 41. The parties consent to the jurisdiction of a U.S. Magistrate Judge. ECF No. 32. For the reasons explained below, Defendants' Motion to Dismiss is DENIED in part and GRANTED in part.

## BACKGROUND

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983. Compl. ¶ 36, ECF No. 1. Plaintiffs seek declaratory and injunctive relief to enjoin enforcement of Oregon Legislature SB 1589, codified at Chapter 119 of Oregon Laws 2022 (the "State Law").[1] *Id.* The State Law prohibits certain recreational boating activities in a portion of the Willamette River, discussed below. Plaintiffs allege that the State Law violates Plaintiffs' rights under the Federal Aid in Sport Fish Restoration Act, 16 U.S.C. § 777 *et. seq.* (the "Act"). Compl. ¶ 36.

### A. The Parties

Plaintiff Boaters Rights Association (the "Boaters Association"), is an Oregon nonprofit organization that promotes and advocates for the legal rights of recreational boaters, including boaters who wake surf and engage in towed water sports in the Newberg Poll in boats exceeding 5,500 lbs. Compl. ¶ 7. The Boaters Association is comprised of recreational boaters and recreational boating business owners and alleges that its members are adversely affected by the State Law. Compl ¶ 25. Plaintiffs Scott and Shaloe Putnam are individuals who own a home on the banks of the Newberg Pool and desire to continue engaging in recreational boating activities now prohibited by the State Law. Compl. ¶¶ 9, 10, 26–27. In August 2022, Plaintiff Putnam

---

[1] Additionally, Plaintiffs seek costs and fees and "other relief as the Court deems just and proper." Compl. ¶ 36.

allegedly received a citation in the Newberg Pool for violating the State Law by engaging in towed watersports in a boat exceeding 5,500 lbs. Compl. ¶ 27.

The named official-capacity defendants in this action are Oregon Department of Fish and Wildlife Director Curt Melcher ("Director Melcher") and the five members of the Oregon State Marine Board (the "Marine Board"). Compl. ¶¶ 10–13.[2] Director Melcher is allegedly responsible for allocating the federal funds received from the Act. Compl. ¶ 10. Plaintiffs allege that the Marine Board is responsible for administering the State Law and for regulating towed watersports and wake surfing in the State of Oregon. Compl. ¶ 13. The Marine Board also allegedly contracts with county sheriff's offices to enforce boating laws on the Willamette River. Compl. ¶ 13.[3]

### B. The Federal Aid in Sport Fishing Restoration Act

The Act, passed in 1950, provides federal grants to states for the construction and maintenance of recreational boating facilities, among other things. 16 U.S.C. § 777g. The Act establishes a dedicated funding source by imposing an excise tax on boating related items such as fishing equipment and motorboat fuel. A state that receives funding "shall allocate 15 percent of the funds apportioned to it . . . to improve the suitability of such waters for recreational boating purposes." 16 U.S.C. § 777g(b)(1). The Act requires the adoption of a national framework that may be used by the states for assessing the adequacy of a state's "access to recreational waters for all sizes of recreational boats." 16 U.S.C. § 777g(g)(1). "The Secretary of the Interior is authorized to make rules and regulations for carrying out the" Act. 16 U.S.C. § 777i. The enabling regulations specify that "[a] broad range of access facilities and associated

---

[2] Specifically, the Marine Board members sued in their official capacity are Defendants Laura Jackson, Val Early, Craig Withee, Colleen Moran, and Jorge Guzman. Compl. ¶ 13.
[3] The Clackamas County Sheriff's Office and the Yamhill County Sheriff's Office were also named as defendants but have been voluntarily dismissed without prejudice. Order of Dismissal, ECF No. 22.

Page 3 — OPINION AND ORDER

amenities can qualify for funding, but they must provide benefits to recreational boaters." 50 C.F.R. § 80.51(b)(1).

The Act allegedly creates rights for recreational boaters to access and recreate in waters using facilities that were built with funds allocated under the Act. Compl. ¶ 32. Plaintiffs allege that Director Melcher oversees and manages the federal funds received pursuant to the Act, averaging $25 million annually. Compl. ¶ 20. For purposes of this motion, Defendants do not dispute Plaintiffs' allegation that facilities at the Newberg Pool are funded by the Act. Defs.' Mot. at 6.

### C. The Challenged State Law

In 2019, the Oregon legislature created a "towed watersports program" to develop and promote towed watersports safety and address operator responsibilities for accident and property damage prevention. Or. Rev. Stat. ("ORS") §§ 830.640(1) and (2). The Legislature named the section of the Willamette River from river mile 30 to 50 the Newberg Pool Congested Zone (the "Newberg Pool") and created enhanced enforcement of the requirements necessary to engage in towed watersport in the Newberg Pool. ORS § 830.649; ORS § 830.652. The Marine Board, authorized by statute, promulgated rules that established "slow-no wake" zones around docks and floating homes, established hours for motorboat usage, and created dedicated areas for wake surfing. *See*, e.g., Or. Admin. R. ("OAR") 250-020-0385 (2021). The Marine Board also created rules prohibiting boaters in the Newberg Pool from engaging in towed watersports in boats exceeding 10,000 pounds. OAR 250-018-0010(9) (2020).

Then, in 2022, the Oregon legislature passed SB 1589, amending the 2019 towed watersports program statutes, and codifying the State Law now challenged by Plaintiffs. As relevant to Plaintiffs' claim, the State Law prohibits boaters in the Newberg Pool from (1)

engaging in towed watersports in boats exceeding 5,500 pounds; and (2) wake surfing regardless of the size of the boat. Chapter 119 of Oregon Laws 2022 (SB 1589).[4]

Plaintiffs allege that the State Law violates the rights conferred to recreational boaters under the Act. Compl. ¶32.

## LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 12(b)(6), a motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017). A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In a Rule 12(b)(6) analysis, the court must accept well-pleaded factual allegations as true and construe the complaint in the plaintiff's favor. *Id.*

A defending party may move under Fed. R. Civ. P. 12(b)(1) for dismissal for lack of subject matter jurisdiction. "A sovereign immunity defense is quasi-jurisdictional in nature and

---

[4] "Towed watersports" means "activities that involve being towed by a vessel such as, but not limited to, water skiing, wakeboarding, and tubing" but excludes wake surfing. Chapter 119 of Oregon Laws 2022, Sec. 2(b); OAR 250-018-0010(16). "Wake surfing" means "the activity of propelling an individual forward on equipment similar to a surfboard, using a boat's wake. The person may be holding a rope or free riding. Equipment used in this activity may include but is not limited to wake surf boards, wake boards, stand up paddleboards and hydrofoils." Chapter 119 of Oregon Laws 2022, Sec. 2(c).

Page 5 — OPINION AND ORDER

may be raised in either a Rule 12(b)(1) or 12(b)(6) motion." *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017) (internal quotation marks removed). In a facial attack under Rule 12(b)(1), the defendant "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). Accordingly, a facial attack under Rule 12(b)(1) is resolved by the same standards of a Rule 12(b)(6) motion. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

If a motion to dismiss is granted, the "court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, within its discretion, a district court may dismiss the claim with prejudice if amendment would be futile. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

## DISCUSSION

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move to dismiss, asserting that the Act does not confer the individual right that Plaintiffs seek to enforce under § 1983; and even if it did, the State Law is consistent with the Act. Defs.' Mot. at 2. Additionally, Defendants assert that the Eleventh Amendment bars the claims against Director Melcher and move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Id.* The Court finds that (1) the Act confers an enforceable right under § 1983; (2) Plaintiffs have plausibly alleged a violation of the right created under the Act; and (3) the claim against Director Melcher is barred by the Eleventh Amendment.

### A. The Act Confers an Enforceable Right

As a threshold matter, the Court must determine whether, in passing the Act, Congress intended to confer a right enforceable under § 1983.

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (quotation marks omitted). "Accordingly, it is *rights,* not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). "The inquiry into whether a statute creates a right enforceable under § 1983 is one of congressional intent." *California State Foster Parent Ass'n v. Wagner*, 624 F.3d 974, 978 (9th Cir. 2010). Congress must have "unambiguously" intended the statute to benefit the plaintiff. *Gonzaga*, 536 U.S. at 283.

Under the so-called *Blessing* test, to determine Congress' intent, the court considers whether the statute (1) is intended to benefit the class of which the plaintiff is a member; (2) sets forth standards, clarifying the nature of the right, that make the right capable of enforcement by the judiciary; and (3) is mandatory, rather than precatory, in nature. *Blessing*, 520 U.S. at 340–41. "In carrying out this inquiry, [the court should] examine whether particular statutory provisions create specific enforceable rights, rather than considering the statute and purported rights on a more general level." *Legal Servs. of N. California, Inc. v. Arnett*, 114 F.3d 135, 138 (9th Cir. 1997) (citing *Blessing*, 520 U.S. at 341–42). "If all three prongs are satisfied, 'the right is presumptively enforceable' through § 1983." *Planned Parenthood Arizona Inc. v. Betlach*, 727 F.3d 960, 966 (9th Cir. 2013) (quoting *Gonzaga*, 536 U.S. at 284)).

The presumption is rebutted, foreclosing enforcement of the right through § 1983, where the statute contains (1) an express provision precluding a cause of action under § 1983 or (2) "'a comprehensive enforcement scheme that is incompatible with individual enforcement under section 1983.'" *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120 (2005) (quoting *Blessing*, 520 U.S. at 341). However, where a statute contains neither judicial

nor administrative remedies available to private parties, the statute does not imply the foreclosure of a § 1983 remedy, even where the government retains oversight of statutory compliance. *Blessing*, 520 U.S. at 346–48.

In 1995, the Ninth Circuit "conclude[d] that the Act unambiguously creates a right enforceable under section 1983." *Buckley v. City of Redding, Cal.*, 66 F.3d 188, 192 (9th Cir. 1995). After the city passed an ordinance prohibiting the use of jet-skis on a section of the Sacramento River, the plaintiffs in *Buckley* filed suit seeking declaratory and injunctive relief to enjoin enforcement of the city ordinance. *Id.* at 189. The plaintiffs asserted "a statutorily created right of equal access for boats of common horsepower at boat launch facilities constructed under the Act." *Id.* at 190. However, the Ninth Circuit framed the issue more broadly, and determined that the Act conferred plaintiffs with the right "to access certain waterways for specified recreational purposes." *Id.* at 189. While only Congress can confer a federal right, the Ninth Circuit interpreted the scope of the rights conferred under the Act by looking to an agency regulation that prohibited discrimination between boats of common horsepower. *Id.* at 192. Reversing the district court's dismissal of the action, the Ninth Circuit held "that the Act does confer rights enforceable under section 1983[.]" *Id.*

Defendants interpret Plaintiffs' Complaint as alleging the Act's conferral of "unfettered rights to recreational boating." Defs.' Mot. at 2. Defendants assert the Complaint should be dismissed because "Plaintiffs do not have an enforceable federal right to wake surf and engage in towed watersports in a boat that exceeds 5,500 pounds in the Newberg Pool." Defs.' Mot. at 7. However, Defendants' framing of Plaintiffs' claim is too narrow. Turning directly to the Complaint, Plaintiffs allege that "the Act creates rights for recreational boaters to access and

recreate in waters using facilities that were built with funds allocated under the Act." Compl. ¶ 32. The right Plaintiffs seek to enforce echoes the Ninth Circuit's finding in *Buckley*.[5]

Applying the *Blessing* test, the Court finds that the Act unambiguously confers the right that Plaintiffs seek to enforce under § 1983. First, the text of the Act is "phrased in terms of the persons benefited." *Gonzaga*, 536 U.S. at 284 (quotations omitted). The Act repeatedly focusses on improving recreational use, necessarily for the benefit of recreational users. For example, § 777e(a)(1) requires States to submit a plan which shall insure federal funding is used for the "recreational enrichment of the people . . . and be based on projections of desires and needs of the people for a period of not less than fifteen years."[6] The Act is clearly intended to benefit recreational boaters, and Plaintiffs have plausibly alleged membership of that class.

Second, the Act sets forth standards that make the right capable of judicial enforcement. In *Blessing*, the Supreme Court remanded because "[t]he Court of Appeals did not specify exactly which 'rights' it was purporting to recognize, but it apparently believed that federal law gave respondents the right to have the State substantially comply with Title IV–D in all respects." *Blessing*, 520 U.S. at 342. In contrast, in *Buckley*, the Ninth Circuit specified which rights it was purporting to recognize, finding the Act gave the plaintiffs the right to use federally funded facilities to access waterways for specified recreational purposes. *Buckley*, 66 F.3d at 189. Pursuant to § 777g(b)(1) of the Act, States are required to allocate funds "to improve the

---

[5] Defendants challenge *Buckley's* continued vitality, following the Supreme Court's decisions in *Blessing* and *Gonzaga* which clarified "confusion" in the lower courts regarding the type of specific statutory language that is required to show Congressional intent to confer an enforceable right under § 1983. Defs.' Mot. at 9 (quoting *Gonzaga*, 536 U.S. at 283). However, in *Save Our Valley v. Sound Transit*, 335 F.3d 932 (9th Cir. 2003), published after *Blessing* and *Gonzaga*, the Ninth Circuit reaffirmed its reasoning in *Buckley*, stating "rather than contradicting the view that only Congress can create a right enforceable under § 1983, our opinion in *Buckley* supports it." *Save Our Valley*, 335 F3d. at 941–42.

[6] *See also* § 777g(b)(1) (requiring allocation of funds "to improve the suitability of such waters for recreational boating purposes."); and §777g(g)(1) (requiring state participation in assessment of "facilities providing access to recreational waters for all sizes of recreational boats.").

Page 9 — OPINION AND ORDER

suitability of such waters for recreational boating purposes." While only Congress can confer statutory rights, agency regulations that interpret a statute are "relevant in determining the scope of the right conferred by Congress." *Save Our Valley*, 335 F.3d at 943. Regulations under the Act authorize federal funding for assessing the adequacy of a state's "access to recreational waters for all sizes of recreational boats." 50 C.F.R. § 80.51(b)(2). Thus, the Act contains standards that make the right capable of judicial enforcement.

Last, it is also clear that the Act is mandatory, rather than precatory in nature. States that receive funding under the Act are obligated to allocate 15 percent of the funds to improve the suitability of the state's waters for recreational boating purposes. 16 U.S.C. § 777g(b)(1). While "[a] broad range of access facilities and associated amenities can qualify for funding, . . . *they must provide benefits to recreational boaters*." 50 C.F.R. § 80.51(b)(1) (emphasis added). "The state's obligation is in the nature of a contract and is clearly binding." *Buckley*, 66 F.3d at 192 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981); and *Suter v. Artist M.*, 503 U.S. 347, 356 (1992)).

Because all three prongs of the *Blessing* test are satisfied, Plaintiffs' asserted right is presumptively enforceable through § 1983. Defendants do not assert that the Act contains an express provision precluding a cause of action under § 1983 or that the Act contains an incompatible comprehensive enforcement scheme. And the Court finds "[n]othing in the Act suggest[ing] that Congress expressly intended to foreclose the section 1983 remedy." *Buckley*, 66 F.3d at 192. Nor does the Act contain a remedial scheme "so comprehensive as to leave no room for additional private remedies." *Id.* at 193. The presumption of an enforceable right through § 1983 remains unrebutted; the Act confers recreational boaters with the enforceable right under § 1983 to access the Newberg Pool for specified recreational purposes.

### B. Plaintiffs Plausibly Allege a Violation of the Right Conferred Under the Act

Defendants assert that, even if the Act confers an individual right enforceable under § 1983, Plaintiffs' Complaint should be dismissed because the State Law is consistent with the Act, and the Act does not usurp the Oregon's regulatory authority. Defs.' Mot. at 11. Defendants cite to U.S. Fish & Wildlife Service Guidance, 517 FW 7 (2012), which provides that funded facilities "must be available to all recreational boaters, but States may restrict uses for public safety, property protection, noise abatement, or aquatic resource protection." *See* Englander Decl. Ex. 2, ECF No. 28. However, given the present record before the Court, determination of whether the State Law is consistent with the Act is premature. While further stages in the litigation *may* ultimately lead to a different outcome, "a motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief." *Los Angeles Lakers, Inc.*, 869 F.3d at 800. On a 12(b)(6) motion, the Court must construe the Complaint in Plaintiffs' favor. *Ashcroft*, 556 U.S. at 678. Because the State Law prohibits Plaintiffs from wake surfing and engaging in other recreational boating activities in the Newberg Pool, Plaintiffs have plausibly alleged that the State Law violates Plaintiffs' right, conferred under the Act, to use federally funded facilities to access waterways for specified recreational purposes. Defendants are not entitled to dismissal of the case pursuant to Fed. R. Civ. P. 12(b)(6).

### C. Eleventh Amendment Immunity

Defendants assert that Plaintiffs' claim against Oregon Department of Fish and Wildlife Director Melcher should be dismissed because Director Melcher has no authority or responsibility to enforce the State Law. Defs.' Mot. at 12. Therefore, Defendants assert, Director

Melcher is immune from Plaintiffs' suit pursuant to the Eleventh Amendment. *Id.* Plaintiffs' respond that because Director Melcher has some connection with enforcement of the State Law, the *Ex Parte Young* exception applies, permitting Plaintiffs' suit for prospective injunctive and declaratory relief. Pls.' Mot. at 18–19.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment erects a general bar against federal lawsuits brought against a state." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). "It does not, however, bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133–34 (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 155–56, (1908)). Under the so-called *Ex parte Young* exception to Eleventh Amendment immunity, the named state officer "must have some connection with the enforcement" of the state law being challenged. *Ex parte Young*, 209 U.S. at 157; *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004). That is, "the implicated state official [must] have a relevant role that goes beyond a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision." *Mecinas v. Hobbs*, 30 F.4th 890, 903–04 (9th Cir. 2022) (quotation omitted).

Plaintiffs allege that Director Melcher "oversees and is responsible for allocating federal funds received from the Act[.]" Compl. ¶ 10. Because Director Melcher is responsible for ensuring that the use of the funds do not violate the Act, Plaintiffs assert that Director Melcher has "some connection" with enforcement of the State Law, permitting suit under *Ex parte Young*.

Page 12 — OPINION AND ORDER

Pls.' Resp. at 20; Compl. ¶ 20. Plaintiffs also assert that the *Ex parte Young* exception applies because the Act is allegedly incorporated into Oregon's wildlife laws, which Director Melcher has the power to enforce. Pls.' Resp. 19. However, Plaintiffs fail to connect Director Melcher's role as head of the Oregon Department of Wildlife to the enforcement of the State Law. In contrast, Defendants do not challenge that the Marine Board's alleged oversight of towed watersports in the Newberg Pool creates a sufficient connection with the State Law to invoke the *Ex parte Young* exception to Eleventh Amendment immunity. However, the State Law is not a wildlife law. ORS § 496.002 ("ORS chapters 496, 497, 498 and 501 may be cited as the wildlife laws"). Director Melcher's alleged oversight and enforcement of the Act does not create a sufficient connection to the State Law. Plaintiffs' claim against Director Melcher is therefore barred by the Eleventh Amendment. Because amendment of the claim would be futile, the claim against Director Melcher is dismissed with prejudice.

## CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss the claim against the Marine Board is DENIED and Defendants' Motion to Dismiss the claim against Director Melcher is GRANTED, with prejudice.

DATED this 5th day of January 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge