UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| BOATERS RIGHTS ASSOCIATION, *an Oregon non-profit corporation*; SCOTT PUTNAM, *an individual*; and SHALOE PUTNAM, *an individual*, | Case No. 6:23-cv-00333-MTK |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| CRAIG WITHEE, *in his official capacity as co-chair of the Oregon State Marine Board*; JORGE GUZMAN, *in his official capacity as a member of the Oregon State Marine Board*; LAURA JACKSON, *in her official capacity as chair of the Oregon State Marine Board*; STEVEN LAMBERT, *in his official capacity as a member of the Oregon State Marine Board*; and DAX MESSETT, *in his official capacity as a member of the Oregon State Marine Board*, | |
| Defendants. | |

**KASUBHAI,** United States District Judge:

Plaintiffs challenge a state law the prohibits certain recreational boating activities in a portion of the Willamette River in Oregon. Before the Court is Plaintiffs' Motion for Summary Judgment (ECF No. 51) and Defendants' Cross Motion for Summary Judgment (ECF No. 53).

The Court heard Oral Argument on November 5, 2024. ECF No. 75. For the reasons explained below, Plaintiffs' Motion for Summary Judgment is DENIED and Defendants' Cross Motion for Summary Judgment is GRANTED.[1]

## BACKGROUND

This case arises out the enactment of Oregon Legislature Senate Bill 1589 ("State Law"), codified at Chapter 119 of Oregon Laws 2022. The State Law prohibits wake surfing and also prohibits engaging in towed watersports in a boat that weighs 5,500 pounds or more.[2] Plaintiffs contend that the State Law violates Plaintiffs' rights under the Federal Aid in Sport Fish Restoration Act, 16 U.S.C. § 777 *et. seq.* ("Act"). Plaintiffs seek declaratory and injunctive relief to enjoin enforcement of the State Law. In their Complaint, Plaintiffs allege that the State Law "prohibits Plaintiffs from utilizing federally funded facilities constructed and operated for recreational boating access to the Newberg Pool." Compl. ¶ 29 ECF No. 1. On January 5, 2024, the Court held that "the Act confers recreational boaters with the enforceable right under § 1983 to access the Newberg Pool for specified recreational purposes." January 5, 2024, Opinion and Order at 10, ECF No. 43. The Court concluded that determination of whether the State Law in fact violates the right conferred under the Act was premature and denied Defendants' motion to dismiss the claims against the Oregon State Marine Board (the "Marine Board"). *Id.* at 11, 13.

/ / /

/ / /

---

[1] Plaintiffs also move for attorney fees under 42 U.S.C. § 1988 which the Court denies.

[2] "Wake surfing" means "the activity of propelling an individual forward on equipment similar to a surfboard, using a boat's wake. The person may be holding a rope or free riding. Equipment used in this activity may include but is not limited to wake surf boards, wake boards, stand up paddleboards and hydrofoils." Chapter 119 of Oregon Laws 2022, Sec. 2(c). "Towed watersports" means "activities that involve being towed by a vessel such as, but not limited to, water skiing, wakeboarding, and tubing" but excludes wake surfing. Chapter 119 of Oregon Laws 2022, Sec. 2(b); Or. Admin. R. ("OAR") 250-018-0010(16).

## I.    Legal Framework

### A.    The Federal Aid in Sport Fishing Restoration Act

The Act, passed in 1950, provides, among other things, federal grants to states for the construction and maintenance of recreational boating facilities. 16 U.S.C. § 777g. The Act establishes a dedicated funding source by imposing an excise tax on boating related items such as fishing equipment and motorboat fuel. A state that receives funding "shall allocate 15 percent of the funds apportioned to it . . . to improve the suitability of such waters for recreational boating purposes." 16 U.S.C. § 777g(b)(1). One of the purposes of the Act is to increase access for boaters and the suitability of waters for recreational boating purposes. 50 C.F.R. § 80.51(b)(1) (enabling regulation specifying that "[a] broad range of access facilities and associated amenities can qualify for funding, but they must provide benefits to recreational boaters"); 16 U.S.C. § 777g(b)(1) (requiring allocation of funds "to improve the suitability of such waters for recreational boating purposes"). Money generated under the Act is apportioned to state fish and wildlife agencies based on each state's number of fishing license holders and the land area of the state. 16 U.S.C. § 777c(c)(1).

### B.    The State Law Challenged by Plaintiffs

In 2019, the Oregon legislature created a "towed watersports program" which enabled the Marine Board to develop and promote towed watersports safety and address operator responsibilities for accident and property damage prevention. Or. Rev. Stat. ("ORS") 830.640(1) and (2); *see also* ORS 830.643–55. The Legislature named the section of the Willamette River from river mile 30 to 50 the Newberg Pool Congested Zone ("Newberg Pool") and created enhanced enforcement of the requirements necessary to engage in towed watersport in the Newberg Pool. ORS 830.649; ORS 830.652. For example, the program required motorboat operators to hold a towed watersport endorsement which requires the motorboat operator to

demonstrate an understanding of minimum standards for boating safety. ORS 830.643(1). Recreational boaters in the Newberg Pool are also required to affix a towed watersport certificate decal when engaging in towed watersports. ORS 830.643. The statutes authorized the Marine Board to issue and renew these endorsements and certificates. ORS 830.640(2)(b) and (c). The 2019 statutes further provided that the Marine Board may set rules limiting the weight of boats eligible to receive a towed watersport endorsement and certificate. ORS 830.643(2)(a) and (b). Consistent with the 2019 legislation, the Marine Board promulgated rules including setting a maximum loading weight of 10,000 pounds to receive a towed watersports motorboat certificate, OAR 250-018-0010(9) (2020 ver.), and provided that wake surfing was within the scope of activities allowed under the towed watersports program, OAR 250-018-0010(16)–(17) (2020 ver.); see also ORS 830.643(2)(a) and (b) (providing Marine Board with rulemaking authority).

In 2022, the legislature again took up the issue of towed watersports and wake surfing in the Newberg Pool. The legislature codified the State Law by enacting SB 1589, which amended the 2019 statutes in ways that are relevant to this case. *See* Englander Decl. in Support of Motion to Dismiss Ex. 1 (copy of Senate Bill 1589), ECF No. 28-1. First, the legislature banned wake surfing in the Newberg Pool and excluded the activity from the definition of towed watersports. Senate Bill 1589 §§ 2(b), and 2(5). And second, the legislature amended the Marine Board's 10,000-pound rule by decreasing the maximum weight of a motorboat eligible to receive a towed watersport certificate down to less than 5,500 pounds. Senate Bill 1589 § 1(2)(b) (amending ORS 830.643(2)(b)). In other words, the State Law still permits boats of any size to access and recreate in the Newberg Pool, however, boats weighing 5,500 pounds or more are ineligible to receive a towed watersports endorsement, and engaging in towed watersports in the Newberg Pool without a towed watersports endorsement is a citable offense.

The Marine Board contracts with local sheriffs' offices to enforce the State Law. ORS 830.140. The State Law is also privately enforceable under ORS 153.058(1) which provides, in relevant part "[a] person other than an enforcement officer may commence a violation proceeding by filing a complaint with a court that has jurisdiction over the alleged violation." ORS 153.058(8)(a) (violation proceedings that may be brought by a private person include "[b]oating violations under ORS chapter 830").

## II.    The Parties

The named official-capacity defendants in this action are members of the Marine Board.[3] The Marine Board is responsible for administering the State Law and for regulating towed watersports and wake surfing in the State of Oregon. For example, the Marine Board verifies a boat's weight to determine whether it is eligible to receive a towed watersport certificate. Second Gibson Decl. Ex. 1 ("Pls.' RFA") RFA No. 3, ECF No. 62. The Marine Board contracts with county sheriffs to enforce boating laws on the Willamette River. *Id.* at RFA No. 2. Oregon Department of Fish and Wildlife ("ODFW") receives about $8 million per year of funding from the Act, fifteen percent of which is used for boating access projects. Huchko Decl. ¶¶ 3–4, ECF No. 55. Funding apportioned under the Act was used for the construction and maintenance of facilities along the Newberg Pool. Second Gibson Decl. Exs. 2–4. The Marine Board receives some of this funding indirectly through ODFW. Specifically, ODFW apportions funding allocated for the improvement of recreational boating to the Marine Board through subcontracts in exchange for the Marine Board's technical assistance to other third-party entities in the

---

[3] This Court previously dismissed with prejudice the claims against the director of the Oregon Department of Fish and Wildlife, finding that the *Ex Parte Young* exception to Eleventh Amendment immunity did not apply because, despite having oversight of the allocation of funds allocated under the Act, the director had no connection with the enforcement of the State Law. January 5, 2024, Opinion and Order at 12–13.

construction and improvement of boating facilities. Huchko Decl. ¶ 8; Belleque Decl. ¶ 2, ECF No. 57.

Plaintiff Boaters Rights Association ("BRA") is an Oregon nonprofit non-member organization that advocates for the legal rights of recreational boaters. Englander Decl. In Supp. of Defs.' Cross Mot. ("Second Englander Decl."), Exs. 17 and 18, ECF No. 54. Plaintiffs Scott and Shaloe Putnam live along the Willamette River in the Newberg Pool Congested Zone. Second Englander Decl. Ex. 8 ("Scott Putnam Dep. Tr.") at 7:19–8:23. The Putnams own a motorboat that they use in the Newberg Pool. *Id.* at 12:19–23. Their boat has a maximum loading weight that exceeds 5,500 pounds. Second Englander Decl. Ex. 14 (Pls. Resp. to Interrogatory No. 12). Before the State Law was enacted, the Putnams used their boat to engage in wakeboarding, wake surfing, and other towed watersports in the Newberg Pool. *Id.* at Ex. 11 (Pls. Resp. to Interrogatory No. 3). Since the passage of the State Law, the Putnams have continued to use their boat in the Newberg Pool for cruising, swimming, floating and visiting with friends. Scott Putnam Dep. Tr. at 10:9, 15:18–16:2, 17:19–18:7; Second Englander Decl. Ex. 15 (Shaloe Putnam Dep. Tr.) at 18:8–18, 20:18–21:1.

After the enactment of the State Law, Mr. Putnam applied for a towed watersport certificate decal which the Marine Board denied because his boat exceeds 5,500 pounds. Scott Putnam Decl. ¶ 8, ECF No. 66. Mr. Putnam was later cited and fined for engaging in a towed watersport without a towed watersport certificate decal. *Id.* at ¶ 9. Specifically, in September 2022, a private individual kayaking in the Newberg Pool photographed and videorecorded Mr. Putnam towing his son on a wakeboard without a towed watersport endorsement. Scott Putnam Dep. Tr. at 21:25, 22:1–10. The kayaker then filed a complaint in Clackamas County Circuit Court against Mr. Putnam and served him by mail. Second Englander Decl. Ex. 9; Scott Putnam

Dep. Tr. at 22:9–10. Following a proceeding, the court found Mr. Putnam guilty of ORS 830.649 "[f]ailure to Carry Towed Watersports Endorsement" and fined him $265. Second Englander Decl. Ex. 10. If cited again—by a private citizen or a law enforcement officer—Mr. Putnam could lose his boating license for a year. ORS 830.652(3); Scott Putnam Decl. ¶ 9.

Mr. Putnam has received two warnings from law enforcement officers about enforcement of the State Law. On the first occasion, Mr. Putnam was returning by boat from a friend's home when an officer approached him on a jet ski. Mr. Putnam was not towing anyone; however, the officer saw Mr. Putnam's wakeboards and informed him that he could not pull a wakeboarder without a towed watersport endorsement. Scott Putnam Dep. Tr. 44:13–45:9, 46:6–12, 47:2–7. The warning on the second occasion was similar; Mr. Putnam was not engaged in a towed watersport but a law enforcement officer nevertheless approached and informed him about the State Law's towed watersport endorsement requirement. Scott Putnam Dep. Tr. 29:6–12. Law enforcement officers have cited other recreational boaters for engaging in towed watersports without a towed watersport certificate. Jenny McCallum Decl. ¶ 3, ECF No. 63.

## STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the

Page 7 — OPINION AND ORDER

absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

Defendants argue that this Court lacks jurisdiction because none of the plaintiffs have standing and, in the alternative, the State Law's regulation of recreational boating in the

Newberg Pool is consistent with the scope of the right conferred under the Act. Plaintiffs argue that the State Law violates the right conferred under the Act because it prohibits certain recreational boating activities such as wake surfing and engaging in towed watersports in a boat that exceeds 5,500 pounds. The Court finds that Mr. Putnam has standing and that the State Law is consistent with the right conferred under the Act. Defendants are entitled to judgment as a matter of law.

Defendants make several additional arguments which the Court finds unpersuasive and addresses here at the outset:

First, for the reasons stated in this Court's January 5, 2024 Opinion and Order, the Court rejects Defendants' arguments that Plaintiffs do not have an enforceable right to access the waters of the Newberg Pool for recreational purposes and that *Buckley v. City of Redding, Cal.*, 66 F.3d 188 (9th Cir. 1995) is no longer good law.

Second, the Court rejects Defendants argument that the right conferred under the Act cannot be enforced against the Marine Board because the Marine Board does not directly receive funding from the provisions of the Act related to Plaintiffs' asserted right. The Court's authority to enjoin the Marine Board's enforcement of the State Law arises from the *Ex Parte Young* exception to Eleventh Amendment immunity which requires that the defendant have some connection with enforcement of the challenged state law. *Ex parte Young*, 209 U.S. 123, 157 (1908). Irrespective of the Marine Board's acceptance or use of funding, it is the Marine Board's enforcement of the State Law in waters where recreational boaters are protected by the right conferred under the Act that subjects it to suit. Moreover, the Marine Board receives the relevant Act funding through subcontracts with ODFW. The fact that the funding from the Act is

distributed to ODFW and then awarded by subcontract to the Marine Board does not extinguish the Marine Board's potential for liability for violating the right conferred under the Act.

Last, Defendants' argument that legislative immunity bars Plaintiffs' claims against the Marine Board for the promulgation of regulations is not compelling. Plaintiffs do not seek to hold the Marine Board liable for its promulgation of regulations, rather, Plaintiffs seek declaratory and injunctive relief to stop enforcement of a state law that allegedly violates a right conferred by Congress.

## I.      Standing

Defendants assert that the Court lacks jurisdiction because none of the Plaintiffs can establish standing. "The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others." *Melendres v. Arpaio*, 695 F.3d 990, 999 (9th Cir. 2012) (quoting *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993)). For the reasons explained below, the Court finds that Mr. Putnam has standing, and the Court need not address whether BRA, an organization, meets the requirements for associational standing.

"To have Article III standing, a plaintiff must show at an irreducible minimum (1) that he *personally* has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that the injury is likely to be redressed by a favorable decision." *Leonard*, 12 F.3d at 888 (quotations omitted).

### A.      Injury

Defendants argue that Mr. Putnam cannot show a concrete injury because law enforcement officers have not issued him a citation and he is unable to bring a pre-enforcement challenge because engaging in towed watersports does not implicate a constitutional interest.

"Pre-enforcement injury is a special subset of injury-in-fact." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024). Under a pre-enforcement challenge, "it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). "This principle applies equally in the civil context." *Peace Ranch, LLC*, 93 F.4th at 487. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) provides the framework used in the Ninth Circuit for determining whether a pre-enforcement injury exists. *Peace Ranch, LLC*, 93 F.4th at 487 (recognizing that the Ninth Circuit has toggled on which test applies and adopting the Supreme Court's framework in *Driehaus*).

The *Driehaus* test consists of three prongs. First, the plaintiff must show "an intention to engage in a course of conduct arguably affected with a constitutional interest." *Driehaus*, 573 U.S. at 161 (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)). Second, the "intended future conduct must be 'arguably . . . proscribed by [the challenged] statute.'" *Peace Ranch, LLC*, 93 F.4th at 487 (alteration in original) (quoting *Driehaus*, 573 U.S. at 164). "And finally, the threat of future enforcement must be 'substantial.'" *Peace Ranch, LLC*, 93 F.4th at 487 (quoting *Driehaus*, 573 U.S. at 164).

    1.    <u>Intention to Engage in a Course of Conduct Arguably Affected with A Constitutional Interest</u>

Defendants argue that Mr. Putnam cannot bring a pre-enforcement challenge because he does not bring a constitutional claim. Ninth Circuit precedent shows otherwise. The plaintiff in *Sturgeon v. Masica*, 768 F.3d 1066 (9th Cir. 2014), *vacated and remanded on other grounds sub nom Sturgeon v. Frost*, 577 U.S. 424 (2016)[4] was repairing his hovercraft[5] on a gravel bar

---

[4] The Supreme Court remanded *Sturgeon v. Masica* for further proceedings on the merits, implicitly affirming the Ninth Circuit's standing analysis. *Sturgeon v. Frost*, 577 U.S. 424 (2016).
[5] A hovercraft is "an amphibious vehicle capable of gliding over land and water" which the plaintiff used to navigate shallow parts of the river for moose-hunting purposes. *Sturgeon v. Frost*, 577 U.S. 424, 427 (2016).

adjoining two rivers in Alaska when law enforcement employees of the National Park Service ("NPS") approached him. *Id.* at 1070. They informed him that NPS regulations prohibited the operation of hovercrafts on that section of the river and issued a verbal warning. *Id.* The plaintiff later contacted both NPS and the Department of the Interior who affirmed their position that the regulation would be enforced against him if he used his hovercraft in that area. *Id.* at 1072. The plaintiff then challenged the NPS regulation, asserting the Alaska Native Lands Conservation Act ("ANILCA"), 16 U.S.C. § 3103(c) precluded enforcement. *Sturgeon v. Striker*, No. 3:11-CV-0183-HRH, 2020 WL 2395983, at *1 (D. Alaska May 12, 2020). Regarding the arguable implication of a constitutional interest necessary to bring a pre-enforcement challenge, the Ninth Circuit explained that the plaintiff's "inability to use his hovercraft for moose-hunting purposes arguably implicate[d] his right under the Privileges or Immunities Clause of the Fourteenth Amendment 'to use the navigable waters of the United States, however they may penetrate the territory of the several States.'" *Sturgeon v. Masica*, 768 F.3d at 1072 (quoting *The Slaughter-House Cases*, 83 U.S. 36, 79 (1872)). Although the NPS regulation was never enforced against him, the Ninth Circuit held that the plaintiff satisfied the injury-in-fact requirement and could proceed on a pre-enforcement challenge to the NPS regulation. *Id.* at 1071.

Whether the hovercraft ban in fact violated the constitutional interest arguably implicated by the plaintiff's intended conduct was outside the scope of the plaintiff's claim. *Sturgeon* illustrates both that (1) the right allegedly violated (in that case, § 103(c) of the ANILCA) may be distinct from the constitutional interest arguably implicated (the Privileges or Immunities Clause) and (2) a constitutional claim is not necessary to bring a pre-enforcement challenge.

Here too, whether the State Law violates Mr. Putnam's statutory right under the Act is distinct from whether his intended conduct arguably implicates a constitutional interest sufficient to bring a pre-enforcement challenge. Central to Mr. Putnam's claim is whether the State Law restricts his ability to use the Newberg Pool, a navigable water of the United States. Mr. Putnam's intended use of the Newberg Pool arguably implicates the constitutional interest of the Privileges or Immunities Clause of the Fourteenth Amendment, specifically, to use the navigable waters of the United States. To be clear, the Court need not opine on whether Mr. Putnam's rights under the Privileges or Immunities Clause are violated. The discrete issue is the arguable implication of a constitutional interest necessary to bring a pre-enforcement challenge. Mr. Putnam satisfies the first prong of the *Driehaus* test.

### 2.  Conduct Arguably Proscribed by the Statute

The parties do not dispute that Mr. Putnam intends to engage in future conduct proscribed by the state law he challenges, satisfying the second prong of the *Driehaus* test. Mr. Putnam wishes to wake surf and to engage in towed watersports in the Newberg Pool in a boat that exceeds 5,500 pounds. The State Law prohibits these activities.

### 3.  Substantial Threat of Enforcement

Mr. Putnam has received two verbal warnings from law enforcement officers patrolling the Newberg Pool. Defendants' argument that these interactions do not suggest a credible threat of enforcement is unpersuasive. Mr. Putnam was not engaging in towed watersports and yet the mere sight of towed watersport equipment on a boat without a towed watersports endorsement prompted the officers to approach. The fact that Mr. Putnam described the law enforcement officers as friendly and as educating him about the State Law does not discredit their underlying message that they intend on enforcing the State Law. At Oral Argument, Defendants' counsel stated that law enforcement have only issued four citations for violations of the State Law. The

record does not contain evidence of anyone who received only a warning after being stopped for violating the state law. The fact that law enforcement has only cited a handful of people could be viewed as evidence that boaters are deterred by a credible threat of enforcement, not that the likelihood of enforcement is insubstantial. Moreover, "Defendants do not and will not disavow enforcement of" the State Law. Defs.' Cross Mot. at 19. Similar to the NPS' warning and vow of enforcement in *Sturgeon*, here too, Mr. Putnam has shown a substantial threat of enforcement of the State Law. The third and final prong of the *Driehaus* test is also met.

### B.    Traceability

The Marine Board is responsible for reviewing boaters' applications to determine whether their boat meets the weight requirements set by the State Law. ORS 830.643; *see also* OAR 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. The Marine Board denied Mr. Putnam's application for a towed watersport endorsement because his boat exceeds the State Law's weight limitation. The Marine Board contracts with law enforcement to enforce the State Law. The credible threat of enforcement of the State Law is traceable to Defendants.

### C.    Redressability

Defendants argue that even if the Marine Board is enjoined from enforcing the State Law, the Court cannot redress the injury because Plaintiffs would remain subject to private enforcement of the State Law.

When the plaintiff seeks to enjoin the government's action or inaction and "the plaintiff is himself an object of the action (or forgone action) at issue, . . . a judgment preventing or requiring the action will [ordinarily] redress" the plaintiff's injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). Plaintiffs seek declaratory relief and to enjoin the Marine Board from enforcing the State Law. Mr. Putnam is the object of the Marine Board's enforcement of the State Law. A judgment in Plaintiffs' favor will redress Mr. Putnam's harm.

Contrary to Defendants' argument, a private enforcement mechanism does not defeat standing if the court can still redress the harm specific to the public enforcer. *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 62–63 (9th Cir. 2024) ("Potential declaratory or injunctive relief would directly redress the injury stemming from the Attorney General's threat of enforcement. That private actors could also seek to enforce the [state law] does not defeat the court's ability to redress harms specific to the Attorney General."). "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." *Larson v. Valente*, 456 U.S. 228, 243 n. 15 (1982). Declaratory and injunctive relief will directly redress the harm stemming from the Marine Board's (and their contracted law enforcement officers') threat of enforcement.

The Court also notes that in the privately commenced enforcement proceeding, Mr. Putnam was found guilty of ORS 830.649 for "[f]ailure to Carry Towed Watersports Endorsement" and fined $265. Englander Decl. Ex. 10, ECF No. 54. Mr. Putnam applied for but was denied a towed watersport endorsement because his boat exceeded the weight limit. If the Court declared the State Law invalid, the Marine Board would no longer have a basis for denying Mr. Putnam's application for a towed watersports endorsement. Once properly endorsed, a private individual could not commence a violation proceeding against Mr. Putnam for failure to carry a towed watersports endorsement.

### D.    Findings

In summary, Mr. Putnam has standing to bring a pre-enforcement challenge to the State Law. The Right conferred under the Act arguably implicates his constitutional right to use the navigable waters of the United States under the Privileges or Immunities clause of the Fourteenth Amendment. The activity he seeks to engage in is proscribed by the State Law and there exists a

credible threat of enforcement against him. Mr. Putnam's injury is traceable to the Marine Board because it enforces the State Law. The Court can redress Mr. Putnam's injury by enjoining the Marine Board's enforcement.

## II.    Whether the State Law Violates the Right Conferred Under the Act

The parties do not dispute that wake surfing is a recreational boating activity, that engaging in towed watersports in a boat weighing 5,500 pounds or more is a recreational activity, and that the State Law prohibits these activities in the Newberg Pool. Plaintiffs argue that "[t]he State Law is clearly in violation of the Act because the law prohibits recreational boaters from engaging in several types of watersports." Pls.' Reply Mot. at 8–9, ECF No. 61. Defendants argue that the State Law is consistent with the Act because it does not prohibit Plaintiffs from using federally funded facilities to access the Newberg Pool for recreational boating. Defendants contend that the scope of Plaintiffs' right extends to access for specified recreational purposes, and that nothing in the Act confers an unfettered right to recreational boating more broadly.

In 1995, the Ninth Circuit "conclude[d] that the Act unambiguously creates a right enforceable under section 1983." *Buckley*, 66 F.3d at 192. After the City of Redding passed an ordinance prohibiting the use of jet-skis on a section of the Sacramento River, the plaintiffs in *Buckley* filed suit seeking declaratory and injunctive relief to enjoin enforcement of the ordinance. *Id.* at 189. The plaintiffs asserted "a statutorily created right of equal access for boats of common horsepower at boat launch facilities constructed under the Act." *Id.* at 190. However, the Ninth Circuit framed the issue more broadly, and determined that the Act conferred the right "to access certain waterways for specified recreational purposes." *Id.* at 189. The Ninth Circuit explained that although the federally funded facility was physically capable of accommodating jet-skis, the city's prohibition on the use of jet-skis on the adjacent waterway was "tantamount to

[a] restriction of the facility." *Id.* at 193. The Ninth Circuit reversed the lower court's 12(b)(6) dismissal and remanded for further proceedings. *Id.*

In its prior ruling, this Court accepted as true—for the purpose of the 12(b)(6) motion— Plaintiffs' allegation that the State Law "*prohibits* Plaintiffs from utilizing federally funded facilities constructed and operated for recreational boating *access to the Newberg Pool*." Compl. ¶ 29 (emphasis added). If that allegation had proven to be true, the facts of this case would be analogous to *Buckley*, where the Ninth Circuit held that the city's prohibition on the use of jet-skis was tantamount to a restriction on the use of a federally funded facility. Unlike in *Buckley*, the State Law does not restrict the type of vessel that can access the Newberg Pool via a federally funded facility. Boats of all sizes are permitted to use federally funded facilities to access the Newberg Pool. The Act confers a right of access using federally funded facilities for "specified" (as opposed to "unspecified" or "unlimited") recreational purposes. Nothing in the Act or the record before the Court suggests that the specific prohibitions imposed by the State Law, or even towed watersports more broadly, are indispensable elements of recreational boating. Contrary to Plaintiffs' allegation, the State Law does not prohibit Plaintiffs from using federally funded facilities to access the Newberg Pool. The State Law's restriction on wake surfing and towed watersports in boats weighing 5,500 pounds or more is consistent with the right conferred by Congress under the Act to access certain waterways for specified recreational purposes.

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For the reasons above, Plaintiffs' motion for summary judgment (ECF No. 51) is

DENIED, and Defendants' cross motion for summary judgment (ECF No. 53) is GRANTED.


DATED this 20th day of December 2024.


s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge